**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Christopher Romano, et al.

   v.                                                        Civil No. 15-cv-384-AJ
                                        Opinion No. 2016 DNH 002

Site Acquisitions, Inc.


**O R D E R**

In a case that has been removed from the New Hampshire Superior Court, Christopher Romano, Michael Petros, and Shane Bruneau (collectively, "plaintiffs") bring suit against their former employer, Site Acquisitions, Inc.[1] ("Site Acquisitions" or "defendant"), alleging that the defendant failed to make payments to the plaintiffs earned as part of an incentive program between the defendant and AT&T.  Am. Compl., Doc. No. 13.

Before the court is the defendant's motion to dismiss two counts (Counts IV and V) of the plaintiffs' second amended complaint.  Doc. No. 15.  For the reasons that follow, the defendant's motion is granted.

---

[1] In its motion to dismiss, the defendant notes that it "was converted to a limited liability company effective January 1, 2015" and, therefore, "[t]he correct name for [the] [d]efendant is Site Acquisitions, LLC."  Doc. No. 15-1 at 1.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003)).  Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In other words, the "plaintiff[s'] obligation to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [the plaintiffs'] claims across the line from conceivable to plausible . . . ." Id. at 570.  If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of

2

mere conjecture, the complaint is open to dismissal." <u>Tambone</u>, 597 F.3d at 442.

## Background

Accepting the factual allegations set forth in the plaintiffs' amended complaint as true, the relevant facts are as follows.

Site Acquisitions provides services to the wireless telecommunications industry, including the siting and installation of telecommunications towers.  Am. Compl. ¶ 8, Doc. No. 13.  At various times between 2013 and 2015, the plaintiffs served on tower crews for Site Acquisitions.  <u>Id.</u> ¶ 9.  A tower crew is responsible for installing telecommunications tower systems ("cell phone towers").  <u>Id.</u> ¶ 10.

At some point, AT&T contracted Site Acquisitions to install cell phone towers in New Hampshire.  <u>Id.</u> ¶ 12.  AT&T has an incentive program for tower crews designed to encourage greater performance and minimize substandard tower installations.  <u>Id.</u> ¶ 13.  Under the program, if tower crews met certain quality standards established by AT&T, they were entitled to non-discretionary bonuses.  <u>Id.</u> ¶¶ 15-16.  The bonuses were intended to be directly passed to the tower crews.  <u>Id.</u> ¶ 17.

During a meeting held in 2013, a Site Acquisitions manager explained to the plaintiffs' tower crew that AT&T was offering

incentive pay under the program, and the benefits would be paid directly to the tower crew. Id. ¶¶ 21-23. Based on the representations made by Site Acquisitions, the plaintiffs completed over twenty cell phone tower installations, working weekends and up to seventy hours a week. Id. ¶¶ 24-25. Nearly every cell phone tower completed by the plaintiffs qualified for full payment under AT&T's incentive program. Id. ¶ 26.

Site Acquisitions received payments from AT&T under the incentive program, but did not pass any portion of the funds to the plaintiffs. Id. ¶ 29. Site Acquisitions knew, however, that the payments were intended for the plaintiffs and other qualifying tower crews. Id. ¶ 30. Further, Site Acquisitions never contacted its tower crews about the incentive payments. Id. ¶ 31.

In 2014, a member of the plaintiffs' tower crew asked Site Acquisitions when the crew would receive their incentive payments. Id. ¶ 34. Site Acquisitions stated that the plaintiffs' tower crew would receive payment by the end of 2014. Id. ¶ 35. Instead, the plaintiffs received a holiday bonus significantly smaller than the AT&T incentive program payments the plaintiffs expected to receive. Id. ¶ 36.

On June 25, 2015, the plaintiffs filed an action against Site Acquisitions in Rockingham County Superior Court. Doc. No. 1 at 1. On September 17, 2015, the defendant removed the action

to this court.  Doc. No. 1.  The plaintiffs' second amended
complaint contains seven counts against the defendant: (I)
breach of contract (II) promissory estoppel, (III) unjust
enrichment, (IV) violation of the New Hampshire Consumer
Protection Act, (V) request for equitable accounting, (VI)
failure to pay overtime wage, and (VII) failure to pay all wages
due.  Doc. No. 13.


## Discussion

The defendant moves to dismiss counts IV and V of the
plaintiffs' second amended complaint.  Doc. No. 15.  The court
examines each count in turn.

## I.   Count IV – The New Hampshire Consumer Protection Act

The New Hampshire Consumer Protection Act ("CPA"), New
Hampshire Revised Statutes Annotated ("RSA") § 358-A:2, states
that it is "unlawful for any person to use any unfair method of
competition or any unfair or deceptive act or practice in the
conduct of any trade or commerce within this state."  RSA § 358-
A:2.  "Any person injured by another's use of any method, act or
practice declared unlawful under [the CPA] may bring an action"
under the statute.  RSA § 358-A:10.

However, although "the CPA is broadly worded . . . not all
conduct in the course of trade or commerce falls within its
scope."  State v. Moran, 151 N.H. 450, 452 (2004) (citing

Barrows v. Boles, 141 N.H. 382, 390 (1996)).  The CPA "provides
a non-exhaustive list of specific acts deemed to be unfair or
deceptive."  State v. Sideris, 157 N.H. 258, 262 (2008) (citing
RSA § 358-A:2, I-XIV).  "In determining which commercial
actions, not specifically delineated, are covered by the [CPA],
[courts] have employed the 'rascality' test."  ACAS Acquisitions
(Precitech) Inc. v. Hobert, 155 N.H. 381, 402 (2007)(citing
Moran, 151 N.H. at 452).  "Under the rascality test, the
objectionable conduct must attain a level of rascality that
would raise an eyebrow of someone inured to the rough and tumble
of the world of commerce."  Hobert, 155 N.H. at 402.

Count IV of the plaintiffs' second amended complaint
alleges that the defendant violated the CPA by withholding
incentive payments from AT&T intended for the plaintiffs and
other tower crews.  Am. Compl. ¶¶ 59-67, Doc. No. 13.  The
plaintiffs claim that this conduct was an "unfair and deceptive
act," as defined in the CPA.  Id. ¶ 67.

In its motion to dismiss, the defendant argues that the
plaintiffs' complaint does not properly allege a violation of
the CPA because the claim "arise[s] directly out of their
employment relations with [the defendant]" and "[c]onduct
stemming from the employment relationship is private in nature
and distinct from the genre of marketplace or consumer
transactions."  Doc. No. 15-1 at 4.  The defendant additionally

6

argues that, even assuming the CPA permits claims stemming from
employment relationships, the claim must nonetheless be
dismissed because it fails to satisfy the "rascality test" as
the claim is "grounded on [the defendant's] alleged breach of
contract."  Id. at 6.

The plaintiffs object, arguing that their CPA claim does
not stem "from some simple failure to pay ordinary wages, but
from the unfair manner in which [the defendant] handled money
received from AT&T which . . . [was] specifically intended to
benefit the [p]laintiffs."  Doc. No. 16-1 at 2-3.  Additionally,
the plaintiffs contend that, in viewing the complaint in the
light most favorable to them, a finder of fact could reasonably
find that the defendant's conduct satisfies the rascality test.
Id. at 8.

Here, contrary to the defendant's blanket assertion that a
CPA claim "stemming from [an] employment relationship" is
improper, doc. no. 15-1 at 4, "[t]he New Hampshire Supreme Court
has never decided whether the CPA applies to employer-employee
relations."  Jon-Don Prods., Inc. v. Malone, No. CIV. 02-429-M,
2003 WL 1856420, at *3 (D.N.H. Apr. 10, 2003) (quoting
Bartholomew v. Delahaye Grp., Inc., No. CIV. 95-20-B, 1995 WL
907897, at *9 (D.N.H. Nov. 8, 1995)).  Nevertheless, the mere
allegation of a breach of an employment contract, or any
ordinary contract, fails to state a CPA claim.  See Sideris, 157

7

N.H. at 262 ("An ordinary breach of contract claim . . . is not a violation of the CPA"); Jon-Don Prods., Inc., 2003 WL 1856420, at *3 (holding that an alleged breach of an employment contract "fails to state a claim cognizable under the [CPA]").

Here, even making all reasonable inferences in favor of the plaintiffs, the complaint fails to state a CPA claim.  At worst, the complaint alleges that the defendant entered into a contract with AT&T to install cell phone towers, accepted AT&T's incentive program to provide bonuses to tower crews for good work, told tower crews that they would receive bonuses pursuant to the incentive program, and, after the cell phone towers were installed, knowingly kept the bonuses intended for the qualifying tower crews for its own benefit.

Although the plaintiffs' allegations are serious, "misrepresentations . . . [and] broken promises alone do not rise to the level of rascality where successful [CPA] claims dwell."  Franchi v. New Hampton Sch., 656 F. Supp. 2d 252, 255-66 (D.N.H. 2009); see also Barrows, 141 N.H. at 390 ("selfish bargaining and business dealings will not be enough to justify a claim for damages under the [CPA]")) (quotation marks omitted). Thus, even if the defendant knowingly misrepresented to AT&T and the plaintiffs that they would pay tower crews their earned incentive payments, the plaintiffs have not stated a CPA claim. The defendant's motion to dismiss count IV is granted.

## II.  Count V – The Plaintiffs' Request for Equitable Accounting

In Count V, the plaintiffs request an equitable accounting
of the incentive payments received by the defendant from AT&T.
Am. Compl. ¶ 72, Doc. No. 13.  In the complaint, the plaintiffs
allege that the defendant has not disclosed any received
incentive payments, and, without an equitable accounting of the
payments, the plaintiffs are unable to determine the amount owed
to them.  Id. ¶ 70-71.

In its motion to dismiss, the defendant argues that the
plaintiffs' "[e]quitable [a]ccounting claim is barred by their
ability to conduct discovery via their legal claims for relief
that constitute this action."  Doc. No. 15-1 at 8.  The
plaintiffs object, contending that they have "sufficiently
pleaded . . . a plausible right to accounting, and an accounting
is an entirely appropriate remedy."  Doc. No. 16-1 at 10.

"The propriety of affording equitable relief rests in the
sound discretion of the trial court to be exercised according to
the circumstances and exigencies of the case."  Gutbier v.
Hannaford Bros. Co., 150 N.H. 540, 541 (2004) (reversing a trial
court's decision to grant a petition in equity requesting that
the superior court grant discovery prior to the commencement of
litigation).  In this case, the plaintiffs "know[] the form that
the action should take . . . [and] know[] the identity of the
defendant."  Gutbier, 150 N.H. at 545.  Further, the plaintiffs

have not established a need for accounting as the exact same information could be found in future discovery.  Therefore, although it may be "cheaper, faster and easier to file a petition in equity for discovery than to . . . seek normal discovery, [the plaintiffs] ha[ve] a plain, adequate and complete remedy at law."  Id. (quotations marks omitted).  The defendant's motion to dismiss count V is granted.

### Conclusion

For the foregoing reasons, the defendant's motion to dismiss, doc. no. 15, is granted.  Accordingly, counts IV and V of the plaintiff's second amended complaint, doc. no. 13, are dismissed.

SO ORDERED.

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge


January 4, 2016

cc:   Brandon D. Ross, Esq.
      Peter G. Callaghan, Esq.